IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOSE LUERA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 15-cv-350-MJR-SCW |
| ) | |
| SALVADOR GODINEZ, TRACEY ) | |
| ENGELSON, MARGARET THOMPSON, ) | |
| MAJOR LYERLA, JOHN DOES at MENARD ) | |
| AND STATEVILLE, WEXFORD HEALTH ) | |
| SOURCES, INC., JOHN BALDWIN, RICK ) | |
| HARRINGTON, and MICHAEL LEMKE, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

**REAGAN, Chief Judge:**

### INTRODUCTION

Pursuant to **42 U.S.C. § 1983**, Plaintiff Jose Luera, who at the time was represented by court appointed counsel, filed his Second Amended Complaint (Doc. 82) alleging claims of failure to protect and failure to provide reasonable and necessary medical care claims against numerous individuals at Menard and Stateville Correctional Centers. In addition to Plaintiff's claims against various individual Defendants, Plaintiff also alleged that Defendant Wexford was liable for failing to protect him and for being deliberately indifferent in providing Plaintiff with medical care.

This matter is currently before the Court on Defendant Wexford Health Sources, Inc.'s motion for judgment on the pleadings pursuant to **FED.R.CIV.P. 12(c)** (Docs. 97 and 98). Plaintiff has filed a response in opposition to the motion (Doc. 82). Based on the

following, the Court **GRANTS IN PART** Defendant Wexford's motion.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff's appointed counsel filed his Second Amended Complaint on February 18, 2016, alleging claims for failure to protect and deliberate indifference against various individuals and Wexford Health Sources, Inc. (hereinafter "Wexford") (Doc. 82). As it relates to Wexford, Plaintiff's complaint alleges that when he arrived at Menard Correctional Center from the Northern Reception and Classification Center he was housed with Inmate William Thompson (Doc. 82, ¶ 23). Plaintiff alleges that Defendant Wexford knew that Inmate Thompson had a history of violent behavior and was diagnosed with a mental illness (*Id*. at ¶ 25-26).

Plaintiff continued to be housed with Thompson despite his complaints to various Menard employees and, less than thirty days after arriving at Menard, Plaintiff was attacked by Thompson (Doc. 82, ¶ 34-39). The attack occurred at 7:30 a.m. on October 23, 2011, and Plaintiff remained in his cell, unnoticed by guards, for nearly two hours (*Id*. at ¶ 40, 43-45). Plaintiff's complaint alleges that following the attack he required significant medical care including emergency care, diagnostic care that included neurological evaluations, rehabilitative care, pain management, and other services (*Id.* at ¶48). Plaintiff alleges that Wexford failed to provide the necessary medical care (*Id*. at ¶ 50). Plaintiff was subsequently transferred to Stateville Correctional Center where Plaintiff alleges that Wexford failed to provide him with medication and appropriate medical care for over two years (*Id*. at ¶¶ 51-54).

Specifically as to Defendant Wexford, Plaintiff brings claims of failure to protect (Count II) and deliberate indifference (Counts III and IV). In Count II Plaintiff alleges that Wexford had a duty to provider proper psychiatric care to Inmate Thompson and to protect Plaintiff from Thompson but failed to do so (Doc. 82, ¶ 79). Plaintiff also alleges in Count II that Wexford delayed responding to the assault by two hours, resulting in injury to Plaintiff (Doc. 82, ¶ 84). In Count III, Plaintiff alleges that Wexford had a duty to provide adequate medical care at Menard and failed to do so (*Id*. at ¶ 90-91, 95). Count IV alleges that Wexford failed to provide Plaintiff with adequate medical care while at Stateville, by ignoring his repeated requests for care (*Id*. at ¶101-102).

## LEGAL STANDARDS

Defendant brings its motion pursuant to **FEDERAL RULE OF CIVIL PROCEDURE 12(c).** Rule 12(c) allows for a party to move for judgment "[a]fter the pleadings are closed – but early enough not to delay trial." Thus, such a motion can only be considered after both a complaint and an answer have been filed. ***Brunt v. Serv. Employees Int'l Union*, 284 F.3d 715, 718 (7th Cir. 2002).** In analyzing a claim under Rule 12(c), the court employs the same standard as that used under Rule 12(b)(6). ***Piscotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007).** While a plaintiff does not have to set forth detailed factual allegations, he must "'give the defendant fair notice of what the…claim is and grounds upon which it rests.'" ***Id*. (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).** "Factual allegations must be enough to raise a right to

relief above the speculative level." *Id.* **(quoting** *Bell Atl. Corp. v. Twombly***, 550 U.S. 544, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007)).** The court accepts all well pleaded facts as true and draws all inferences in favor of the plaintiff. *Id.* **(citing** *Thomas v. Guardsmark, Inc.***, 381 F.3d 701, 704 (7th Cir. 2004).**

## ANALYSIS

Plaintiff's second amended complaint alleges that Wexford failed in their duty to protect him from Inmate Thompson and failed to provide him adequate medical care at both Menard and Stateville Correctional Centers following the attack. Defendant Wexford seeks judgment on the pleadings because Plaintiff has failed to state a claim because he did not allege that Wexford had a policy or custom that violated his constitutional rights. In a suit brought under Section 1983, a private corporation acting under color of state law, as Wexford does, is treated as though it were a municipal entity. ***Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 664 (7th Cir. 2016).** A municipality may not be held liable under § 1983 based on a theory of *respondeat superior* or vicarious liability. ***Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978).** Rather, a municipality may only be held liable under § 1983 for constitutional violations caused by the municipality itself through its own policy or custom. *Id*. A plaintiff can establish a municipality has a "policy or custom" that violates his constitutional rights by showing: "(1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute

a custom or usage with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Gable v. City of Chicago*, **296 F.3d 531, 537 (7th Cir. 2002).** In addition to showing that the municipality acted culpably in one of those three ways, a plaintiff must prove causation, demonstrating that the municipality, "through its deliberate conduct,...was the 'moving force' behind the injury alleged." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, **520 U.S. 397, 404 (1997).**

Here, Wexford can only be held liable for their policies and customs rather than for actions of individual employees. Plaintiff's second amended complaint fails to allege that the constitutional violations Plaintiff suffered were the result of a policy or custom of Wexford's. Instead, Plaintiff alleges that Wexford violated their duty to provide him with adequate medical care and to protect him. These allegations do not state a claim for *Monell* liability because Plaintiff essentially seeks to hold Wexford accountable for allegations aim at its employees' actions.

Plaintiff argues that he properly alleges a *Monell* claim because he alleges a series of bad acts by Wexford against Plaintiff by alleging that "at all times" Plaintiff asked for care but Wexford failed to provide it to him, and that Plaintiff made "numerous requests" for care. These actions against Plaintiff, however, do not establish sufficient facts to show that Wexford's actions in all medical treatment are so permanent and well-settled as to establish a widespread custom. Similarly, Plaintiff's complaint does not point to a specific widespread custom established by Wexford that violated his constitutional rights. Instead, Plaintiff only alleges that Wexford failed to provide him

medical care. As such, the Court finds that Plaintiff has failed to adequately allege a *Monell* claim against Wexford. Counts II, III, and IV against Wexford are **DISMISSED without prejudice**.

In addition to the *Monell* issue as a basis for dismissal, Wexford argues that Plaintiff's claims should be dismissed with prejudice because they are barred by the statute of limitations. Wexford suggests that because it was not named as a defendant for more than two years after any alleged inaction or action by Wexford employees at Menard that Plaintiff's claims are barred. Although Wexford was first named in Plaintiff's second amended complaint filed on February 18, 2016, Wexford's motion fails to take into account whether Plaintiff's claims relate back to his original complaint or whether the statute of limitations was tolled while Plaintiff pursued his claims through the IDOC grievance process. *See* **Fed.R.Civ.P. 15(c);** *Johnson v. Rivera*, **272 F.3d 519, 521-22 (7th Cir. 2001) (In a § 1983 case, a court "must toll the limitations period while a prisoner completes the administrative grievance process.").** Accordingly, the Court will not grant judgment on those grounds nor will it dismiss Plaintiff's claims with prejudice.

Lastly, the Court notes that since the filing of Plaintiff's second amended complaint, there has yet to be a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A. The Court is required to conduct such a review and to dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is

immune from such relief. 28 U.S.C. § 1915A(b). Looking at the second amended complaint, Plaintiff identifies as defendants Menard John Does 1-99 and Stateville John Does 1-99. Plaintiff later identifies these groups as correctional officers or medical staff working at the facilities (Doc. 82, ¶ 12), but the Court does not count 99 John Doe Defendants from Menard and Stateville in his complaint. Plaintiff identifies a John Doe counselor at Stateville which the Court will call John Doe #1. Plaintiff also identifies Menard John Does who he claims knew of Inmate Thompson's erratic behavior and whom Plaintiff repeatedly reported his concerns to prior to the assault. He also alleges these same individuals failed to respond to the initial attack and refused to provide him with appropriate medical care. The Court identifies the John Doe Correctional Officers as John Doe #2 (a.k.a. unknown Menard Correctional Officers). Similarly, Plaintiff identifies Stateville John Does who refused to provide him with appropriate medical care. The Court will identify these individuals as John Doe #3 (a.k.a. unknown Stateville Correctional Officers).

## CONCLUSION

The Court **GRANTS** Defendant Wexford's motion for judgment on the pleadings (Docs. 97 and 98) and **DISMISSES without prejudice** Plaintiff's claims against Wexford, including Counts II, III, and IV. The Court further **DIRECTS** the Clerk to substitute the John Doe (Menard and Stateville 1-99) for John Doe #1 (Stateville Counselor), John Doe #2 (unknown Menard Correctional Officers), and John Doe #3 (unknown Stateville Correctional Officers). As Plaintiff's previously appointed counsel has been granted

leave to withdraw from the case, the Court will **APPOINT** new counsel to proceed in this case. Further, in light of the dismissal of the claims against Wexford, the Court **FINDS AS MOOT** Wexford's pending motion for summary judgment on the basis of failure to exhaust administrative remedies (Doc. 111).

    **IT IS SO ORDERED**.
    DATED: January 3, 2017

                                  *s/ Michael J. Reagan*
                                  MICHAEL J. REAGAN
                                  **Chief Judge**
                                  **United States District Court**